[Dkt. No. 12]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## Camden Vicinage

_____
:
THERESA TRIOLA,                  :
                                 :   Civ. No. 20-886 (RMB/JS)
     Plaintiff,                  :
                                 :
     v.                          :        OPINION
                                 :
AFSCME NEW JERSEY COUNCIL 63;  :
Et al.,                          :
_____:

Plaintiff, Theresa Triola ("Plaintiff"), has filed a Complaint against the American Federation of State, County and Municipal Employees New Jersey Council 63 ("Council 63"), and Debbie Parks and Steve Tully ("Parks", "Tully", or "Individual Defendants"), as well as against AFSCME New Jersey Staff Association (hereinafter "ANJSA"). Defendants Council 63, Parks and Tully move for dismissal of the Second and Third Counts of Plaintiff's Complaint. Defendants Parks and Tully also move for dismissal of the First Count of Plaintiff's Complaint. For the reasons herein, the motions are granted.

As alleged in her Complaint, Plaintiff was employed as a staff representative by Council 63, a labor organization that is the bargaining representative of certain municipal and state employees. (Complaint, First Count ¶¶ 2, 4). Defendant Debbie

1

Parks is the Associate Director of Council 63 and was the direct supervisor of Plaintiff. (Complaint, First Count ¶ 7). Defendant Steve Tully is the Executive Director of Council 63. (Complaint, First Count ¶ 14). Defendant ANJSA is a labor association representatives' unit for employees of Council 63 including Plaintiff.

In 2018, as part of her employment, Plaintiff was assigned to Council 63 affiliate, Local AFSCME 3441, and the Housing Authority of Camden employees it represented. (Complaint, First Count ¶9). Plaintiff's responsibilities included filing grievances on behalf of those employees. Id.

In early to mid-2019, Plaintiff worked on organizing a job action in support of terminated Local AFSCME 3441 employees. (Complaint, First Count ¶ 12). Plaintiff alleges that supervisor Parks approved scheduling that job action with the caveat that it occur "after the convention." Id. Afterwards, Plaintiff emailed other supervisors to schedule that job action. (Complaint, First Count ¶ 13). Thereafter, Plaintiff alleges that State Board AFSCME President Ron McMullen requested that Plaintiff place him and Steve Tully on any email communications related to the job action scheduling, with which she claims she complied. (Complaint, First Count ¶ 14).

Plaintiff alleges that she organized and attended the Camden City Hall job action for Local AFSCME 3441 employees on

2

May 14, 2019. (Complaint, First Count ¶15). She then alleges that she received an email on May 16, 2019, requesting an investigative interview regarding her "conduct in setting up the job action." (Complaint, First Count ¶16). On May 22, 2019, Plaintiff was interviewed by Parks, and by supervisor Bob Little, in the presence of Plaintiff's union colleague, Yolanda Lawson. (Complaint, First Count ¶ 17).

On June 7, 2019, Plaintiff received a letter from Defendant Tully of a five (5) day suspension for insubordination (Complaint, First Count ¶ 18). Plaintiff's union, Defendant AFSCME NJ Staff Association, filed a grievance on Plaintiff's behalf regarding that suspension. (Complaint, First Count ¶ 19).

Plaintiff directly communicated with Ron McMullen and other Board members to object to that suspension and assert her rights. (Complaint, First Count ¶ 20). Defendant Tully sent an email to schedule another disciplinary interview regarding those communications. (Complaint, First Count ¶ 21). Parks and Tully conducted that interview with Plaintiff on or about June 27, 2019, and Plaintiff alleges no one was present from her union. (Complaint, First Count ¶ 22).

By letter dated July 1, 2019, Plaintiff received notice of her termination from Defendant Tully, terminating her employment which she claims was related to her contacting Board members and

circumventing the grievance policy. (Complaint, First Count ¶23). Plaintiff alleges that she and ANJSA filed a grievance regarding her termination. (Complaint, First Count ¶ 24). On August 1, 2019, Defendant Tully denied the grievance (Complaint, Fifth Count ¶25). Plaintiff then requested ANJSA to file for arbitration, but on August 1, 2019, ANJSA declined to file for arbitration. (Complaint, First Count ¶ 26-27). Plaintiff alleges that the decision of Defendant ANJSA not to proceed to arbitration was part of a pattern and practice of Defendant ANJSA of depriving Plaintiff and other members of their bargained for representation in arbitration that she was guaranteed under the terms of its agreement with Defendant Council 63 (Complaint, First Count ¶32).

In relevant part, Plaintiff alleges that Defendant Council 63 terminated her employment without just cause and in breach of Defendant ANJSA's Association's contract with Defendant Council 63 and in retaliation for Plaintiff asserting the rights of public employees she represented that were protected under the New Jersey Constitution Article 1, §§ 18 and 19 (Complaint, First Count ¶36).

Plaintiff alleges that Defendant Council 63 breached its own Constitution in disciplining and terminating Plaintiff and

also violated the Labor Management Relations Act ("LMRA") and
the Labor Management Disclosure and Reporting Act ("LMDRA")
(Complaint, First Count ¶38).

It is against this factual backdrop that Plaintiff's
Complaint against Defendants Council 63, Parks, and Tully
alleges: a breach of constitution and collective bargaining
contract, the LMRA and LMRDA in its First Count; a common law
Pierce violation in its Second Count, and a violation of the New
Jersey Conscientious Employee Protection Act ("CEPA") in its
Third Count, for which Plaintiff seeks damages, reinstatement of
employment, punitive damages and attorney's fees. Defendants
AFSCME NJ Council 63, Steve Tully and Debbie Parks now move for
dismissal of the Second and Third Counts.

LEGAL STANDARD

A pleading must contain a "short and plain statement of the
claim showing that the pleader is entitled to relief." Fed. R.
Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 570 (2007)). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.)

"[A] court must accept as true all of the allegations contained in a complaint." Id. A court need not accept legal conclusions as true. Id. Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

In resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). A court may consider documents which are attached to or submitted with the complaint, as well as legal arguments presented in memoranda or briefs and arguments of counsel. Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted). Further, documents whose contents are alleged in the complaint and whose

authenticity no party questions, but which are not physically attached to the pleading, may be considered. Id. The individual Defendants also move for dismissal of the First Count.

LEGAL ANALYSIS

A.   Second Count

In the Second Count of her Complaint, Plaintiff alleges that Defendants suspended and terminated her in violation of a public policy pursuant to Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980). Plaintiff further alleges that the New Jersey Constitution and the New Jersey Employer-Employee Relations Act ("EERA") are the sources of the public policy Defendants violated. However, Plaintiff's attempt to craft a clear mandate of public policy that apply to her as a private actor is misguided.

The law is well-settled that an employee has a common law Pierce claim for wrongful discharge when the discharge is contrary to a clear mandate of policy. Panzino v. Scott Paper Co., 685 F.Supp. 458, 460 (D.N.J. 1988) (quoting Pierce, 84 N.J. 58 (1980)). The employee must point to a clear expression of public policy, however, neither the New Jersey Constitution nor the EERA can be the source of public policy to support Plaintiff's Pierce claim. As the New Jersey Supreme Court held in Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81 (1992), "we are not finding in this

opinion a constitutional right to privacy that governs the conduct of private actors." Id. at 98-99. Moreover, the EERA offers protection to public employers and employees within the jurisdiction of the New Jersey Public Employment Relations Commission ("PERC"). See N.J.S.A. § 34:13A-5.1 et seq. Thus, because Plaintiff has failed to state any violation of a clear mandate of public policy that applies to her, the Motion is granted as to this Count.

B.   Third Count

In her Third Count, Plaintiff alleges that Defendants violated CEPA when they suspended and terminated her in retaliation for her filing a PERC arbitration for the public employees she represented, for scheduling and attending a job action on behalf of those employees and because she complained to the Union's Executive Board of her supervisor's "illegal conduct." (Complaint, Third Count ¶¶ 2 & 3).[1]

---

[1] N.J.S.A. 34:19-3(CEPA) provides in relevant part as follows:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

(a) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

To establish a CEPA claim, a plaintiff is required to demonstrate that: (1) she reasonably believed that her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003); Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 89 (2012). A plaintiff who brings a CEPA claim must enunciate the specific terms of a statute or regulation, or the clear expression of public policy which would be violated if the facts alleged are true, and that closely resemble the complained of conduct. Dzwonar, 177 N.J. 463. Furthermore, a plaintiff's belief that the complained of conduct violated the terms of a statute, regulation or clear mandate of public policy must be objectively reasonable. Id. at 464.

---

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law ....

* * * *

The Court finds that Plaintiff has failed to plead a statute or clear mandate of public policy that would be violated if the facts she alleges are true; or that she reported the alleged illegality to a "supervisor"; or a causal connection between her conduct and the Defendants' decision to suspend her and terminate her employment. First, as discussed above, Plaintiff cannot claim protection under CEPA based upon claims that Defendants Council 63, Parks or Tully violated the EERA or the New Jersey Constitution. At best, it seems, Plaintiff explains her claim as one of retaliation: "Plaintiff has pled that she had a reasonable belief her termination was caused by her reporting of the union president Tully's conduct in suspending her as illegal and a violation of the LMRA and the LMDRA, as well as the NLRA." (Dkt. No. 17, at 4.) A complaint about a private employer's discipline of the employee's violation of the employer's policies or directives, however, is not the same type of violation of law or public policy contemplated by CEPA. "A salutary limiting principle (of CEPA) is that the offensive activity must pose a threat of public harm, *not merely private harm or harm only to the aggrieved employee*." Mehlman v. Mobil Oil Corp., 153 N.J. 163, 188 (1998) citing Littman v. Firestone Tire & Rubber Co., 715 F. Supp. 90, 93 (S.D.N.Y. 1989) (emphasis added); Massarano v. New Jersey Transit, 400 N.J. Super. 474 (App. Div. 2008).

10

Moreover, in addition to failing to identify a law or policy that her suspension allegedly violated, Plaintiff has failed to adequately plead a causal connection. The Complaint clearly sets forth that she was suspended only after an investigative review and that she was suspended for insubordination and violating the chain of command relative to the scheduling of the May job action and the filing of the PERC arbitration.

Finally, Plaintiff has failed to plead whistle-blowing activity. "Whistle-blowing" conduct "specifically refers to notification, or threatened notification, to an outside agency or supervisor...and also permits a claim to be supported by evidence that the employee objected to or refused to participate in the employer's conduct." Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 106 (2008). Plaintiff simply alleges she protested her suspension for her misconduct. That is not enough. For these reasons, Defendants' motion will be granted as to this Count. Defendants Motion will be granted as to this Count.

CONCLUSION

For the reasons set forth above, Counts Two and Three of Plaintiff's Complaint will be dismissed. Count One as to Defendants Parks and Tully will be granted as Plaintiff does not contest the dismissal. An appropriate Order will enter.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: December 11, 2020